The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zeno presiding. Good morning, thank you. This is case number 4-22-0036, City of Rockford, Illinois v. Shaik Joudeh, Naif Joudeh, Rock River Water Reclamation, Unknown Owners, and Non-Record Claimants. Good morning, counsel. Would counsel for the appellant please introduce yourself? Certainly. Good morning. Brian Lynch on behalf of the appellants. Thank you. And would counsel for the appellee introduce yourself, please? Thank you, Judge. If I'm Mo Banna for the City of Rockford. And I'm sorry, pronounce your last name one more time. It's Mo Banna. Mo Banna. So the G is silent. Is that right? It's not. It's... Okay, my hearing is bad then. Okay, I'm sorry. Okay, thanks. Mr. Lynch, you may begin your argument. Thank you. Good morning, Justices. As the attorney for the appellant, this case involves the wrongful demolition of the appellant's property. The City of Rockford initiated its action back in 2019. In 2015, fake Joudeh died. He was no longer able to be a party in this matter. The City initiated its demolition case under Illinois Compiled Statute 65 ILCS 5-11-31-1 that required it to give notice to all the owners of the property. The City named fake Joudeh, perhaps innocently enough, not realizing that he had died five years prior to the initiation of the action. A mere 11 days, they filed the action on March 22, 2019. A mere 11 days after, April 3, 2019, they received notice from their investigator that fake Joudeh was deceased as of 2015. They also had received in that same notice an alternative service address for NIAF Joudeh, which they utilized that alternative service address. That can be noted on part of the record C-196. They utilized that additional information to serve NIAF Joudeh, but they never took the information as it relates to the death of fake Joudeh. They never named the estate of fake Joudeh. They never served the estate of fake Joudeh, and they never gave any notice of the proceedings, the rule to show cause, or the contempt proceedings at any point in time in any of this matter. So when we're looking at their... Excuse me. Certainly. Good morning. Did Joudeh ever inform the court that he was the independent administrator of fake's estate? I do not believe... There's one date, there's one time that he had appeared in court, but he was never given notice of the proceedings. Joudeh was never given notice of any of the proceedings in this matter. But he was in the courtroom at one point, correct? That is correct. At one point in time. And as soon as the court and the court in the city both acknowledged before the demolition of the building, before anybody was held in contempt, that fake Joudeh was deceased. It's clearly in the record. It's stated, I believe they stayed on supplemental record page 50. The city acknowledges on line 14. I do know that we are aware that he is deceased, referring to fake Joudeh. The court goes on to state in that same proceeding that she cannot enter any proceedings, any action against fake Joudeh. They have to bring in the estate. They have to amend, sir, and bring the action against the estate. The court also had an obligation, I would submit, to take an affirmative action and say, wait a minute, we cannot proceed any further. You have a necessary, indispensable party here whose interest is a 50% owner of this property are going to be harmed by this action. You need to name them. The city. But the fact of the matter is neither the estate nor Joudeh Joudeh was a party to the underlying proceeding. And yet. Judah Judah incapacity as or in this role as administrators asking to be a party to this appeal. What supports that position? Certainly, when you have a as the case, the orders void ab initio, the order as it relates to naming the repair order that been entered by the circuit court against fake Judah, not the estate against fake Judah. All and then the contempt subsequently against fake you. Those orders are void ab initio that can be raised. That was not my question. My question is what supports your position that Judah Judah should be allowed to participate in this appeal? The failure to name an indispensable party or deceased party can be raised for the first time on appeal that is stated in the cases that we cite in our opening brief. I believe it's Oglesby that states that as well as I think it's Hobbs Pennell states that the first that a indispensable party can be. It can the issue can be raised for the first time on appeal. Keller versus Walker states that also that it can be raised for the first time on appeal. There's no ability for a deceased party, the estate to raise something below when they're not apprised or not given due process in any respect of the proceedings. So to place in the incumbent burden of especially upon a pro se litigant to say you have to be in interject yourself. You have to intervene. They wouldn't know that, but those cases clearly hold the proposition that the appellate court has original jurisdiction and this can be raised for the first time on appeal. We cited several cases in our opening brief and our reply brief that this can be raised that the state can be brought in as a party filing this appeal for the first time. Well, the show burger case is distinguishable. Is it not? As is the Nugent case, the facts in each of those cases really don't resemble the facts in this case at all. The show burger case and the Nugent case are not the two case we cite. That's for our motion to amend that we had filed and as it relates to that, that's to name Judah Judah to simply add Judah Judah as the administrator. This I would submit that on that issue, the city bringing it in response, they should have brought a motion to dismiss saying, hey, the state is the correct party. It's liberal amendment to pleading should be allowed and dismissal or denial isn't the correct. And that's stated based on the northern Illinois versus Nugent and show burger case. They state that if there's surprise that they look at surprise to the opposing litigant. I'm not quite sure how the city could assert any surprise in this proceeding that the state wants to be party since it was raised below and they were well aware four years ago from today that fake Judah was deceased. They were apprised merely 11 days after they filed the lawsuit and we had raised the issue below that the state was the proper party to this case. So those cases hold that there should be liberal amendment to that. And that's simply naming Judah Judah. But the standing of an estate to bring forth a appeal is clearly laid out in the cases that we cited and that we cited them that the court has original jurisdiction. I think just pants versus Ravenswood in Ray J. And in Ray, the state of Thorpe, which are all raised in our brief articulate that the court has original jurisdiction. The appellate court has jurisdiction. And this can be raised for the first time on appeal. We even raised this below in our underlying motion reconsider breeze before the trial court, as well as the fact that everything is low. Council, excuse me, if I may. My question really relates to does the record contain any evidence that a state still controls a half interest or any interest in the property? What what evidence was there at the trial court level that established his interest in the property? They named the city named him and asserted in their complaint that that fake Judah was the owner. He is the actual owner. And there's testimony that was provided by Mike Judah, the son of Nyef Judah, that his father wasn't sworn testimony. Correct. Um, I at the time that I wasn't counseled for Mike Judah or for Nyef Judah or any of the parties in this case, I came in later. So I believe I presume that all testimony that was provided to the circuit court was sworn testimony. I don't think there was any my recollection of reviewing the transcripts and proceedings that there wasn't any at any point in time. A contesting or an issue associated, I mean, the city even acknowledged that fake Judah was an owner of the property. That's what they asserted in their pleading. Didn't didn't though during the trial proceedings, didn't Nyef's attorney, Mr. Kellerman invite most of the errors by acting as if fake was alive during the pendency of this proceeding? I would say that without commenting on Mr. Kellerman and what he did or didn't do, I think as soon as everybody was aware that fake Judah was deceased, it became incumbent upon the city and the court to require that there be an amendment. And additionally, the court, the court discussed that they could not issue any type of damages against Judah Judah. That's the reference that was made at that time or the estate. I would say it's a nullity. Any action that took place by attorney Kellerman would be a nullity because it's void. Fake Judah does not exist. Whether you file a pleading on behalf of a deceased person, an appearance on behalf of a deceased person, that person does not exist and cannot be be brought before the court in any capacity. I'm not even quite sure how Mr. Kellerman could file an appearance properly before. I think that ultimately, if we look at the circuit court's order, when she vacated the demolition order, which is what she had done, she vacated the demolition order and said everything was wrong. She did wrestle with the fact that Mr. Kellerman filed an appearance on behalf of the fake Judah. However, she said that that wasn't something that she could hold as a basis to provide jurisdiction, to allow her to have jurisdiction over fake Judah. That wouldn't necessarily equate to jurisdiction. How the court could have jurisdiction over a party that does not exist, even if somebody had filed an appearance. Looking at the court's jurisdiction for a moment, your brief indicates that the court has jurisdiction in part pursuant to Supreme Court Rules 301 and 303 because of the trial court's December 17, 2021, order. Does that order and memorandum opinion resolve all the issues in this case between the parties? It does not. What in particular? Well, because there, that doesn't. In other words, is there anything left for the trial court to do if this case were to be affirmed? There's nothing left for the trial court below to do if this court were to affirm the decision. The issue of the estate, though, was never brought before the circuit court. The court never addressed it. They demolished the building that the state had an interest in. The contempt order, which the city never served, never gave notice of, and if we look at the C-50, the rule is void of any reference to even the word defendants. It doesn't state what order was violated. If we look at the contempt order, the contempt order doesn't state if it's civil, direct, indirect, or criminal, and it also doesn't even state what was violated, the order. And none of these documents were even served on fake or naïve. So if we look back and see- You raised a lot of those issues, though, with regards to the trial court's contempt order. But why did the trial court err in finding these issues were forfeited, considering NIAF did not raise those until the amended motion to reconsider at the end of the case? He was a pro se litigant. I don't think it's fair to say, oh, I was supposed to get notice of these things and understand what is- This is an order that's drafted by hand by the city's attorney, and it includes that Judah is the one held in contempt. The attorney for the city even states on the record in the contempt proceedings on the supplemental record, page 30, but I also don't think he understands the consequences of being held in contempt and what that exactly means, being that he is the son of the person who would be held in contempt. The court then goes on and wonders on the same page, sub R31, the court asks, does he know that I was having a hearing today to determine whether he should be held in contempt? Mike Judah says, I mean, what is that? I mean, in contempt, he would just have a judgment against him. This is the son of NIAF Judah who is unrepresented. It's clear that at this point in time that fake Judah- But the court goes on after that, the transcript portion that you just quoted, the court goes on to discuss that further. Um, no, it's the court says no, it's that he's being found not with not being compliant with the court order. They clarified that. She clarifies that. But again, to Mike Judah, not NIAF Judah, who's also a pro se litigant, I think that there's a greater effort here that should have been demonstrated to by the city and by the court to ensure that the rights of the estate were protected. It's an indispensable party here. And I don't believe that there was ever anything saying that these issues were waived because they weren't raised earlier. I'm not quite sure at what point the contempt order could have been challenged earlier in the proceedings. The contempt order was entered on January 8th, 2020. And when you look at the content, it even says that Mike Judah, who the court specifically states that she would not allow him to speak. She says that Mike Judah is appearing on behalf of fake Judah. Well, one, fake Judah is deceased. Mike Judah is not a lawyer. And at the end of the day, it also provides for a punitive relief. The city demolished it. That's count two of the city's complaint. The contempt order, it was count one. That was the only thing. And that was the repair of the property. In the contempt order, the city just doesn't say, hey, I'm going to fine you $1,000 a day. I'm going to hold you in lockup in Winnebago County until the building is demolished. What the city says is you have 21 days. The city drafted the order and the court signed it. Understand that that's procedurally how many things happen. But at the end of the day, it's a punitive action. They don't come back and say, we're going to check on the compliance with our contempt order to see if you've purged it. And if you haven't, we're going to coerce your compliance with that order. Simply put, what the city did is they drafted an order that gave them the ultimate right to demolish this building, which was count two of their complaint, which the trial court never took any evidence on, never moved on. And the transcript is very clear that what they say, the city of Rockford says on the June 18, 2019, we're asking to proceed forward with the hearing today as to count one of the city's complaint, which is seeking an order for the owners to repair the property. Well, there was also, there was also an additional request and that is the, there was a request for relief of demolition. I believe that was in the language as well, not in the first clause, but then it certainly appeared as, as part of it. But I guess what I like to ask though, counsel is what, if maybe you can clarify for this court, what relief you are asking. You indicate in your opening brief that you request this court to review, to reverse the trial court's orders, December 21, and you enumerate the other orders and grant any other relief deemed just and appropriate. What relief are you asking? I'm asking that the orders be reversed. There needs to be a clear message. No, I know that reversed and then do what? And then send it back to the trial court and for, or for, for what? And when I, when it's reversed, I don't believe that there's any, any additional proceedings that need to be taken at the trial court. I think that at that point in time, the matters concluded the city's complaint had sought the demolition of the property. And so at this point in time, the property is demolished. We were not able to do it, but the underlying property owners have rights that need to be protected here. So simply by reversing those orders, I believe that that is going to allow the property owners to move forward as it relates to any action that they might want to initiate if they do, and they have not been retained to handle anything along those lines. But if they wanted to initiate any action against the city of Rockford for wrongful demolition, there's no authority for the demolition of this property based upon the proceedings and the notice that occurred. And so you indicate or tell there might be further proceedings that parties would want to engage in, should we reverse. I'm not sure the parties know what their rights are. And I'm also somewhat, somewhat puzzled by your remarks, a number of remarks about they were pro se. What is a court supposed to do when people appear before them, make representations to them? Maybe our parties that were represented by counsel before he withdrew and then are appearing before the court without disclosing or showing what their relationship is to the property owners. I don't view that as helping the plaintiffs. I view that as being straight with the court. And it didn't seem like anybody ever did that. Or if they did it, they did it very late in the process. What difference does it make that they're pro se? What we're dealing with here is a very high, if we're going to follow a statute that authorizes the municipality to take away the property rights that are guaranteed by the they have to follow that exactly. And they didn't. So as it relates to the litigants before the court and them being pro se, I think we have to take a look and say, well, what happened here? They sought the repair of the building, they being the city. Then they got a rule that doesn't say anything what was violated. Then they got a contempt. And then in the contempt, they gave themselves the authority to demolish the building. Those are all things that I think can very quickly go over the head of a pro se litigant. And I think the court as a neutral arbiter here needs to play more of a role where they're saying, wait a minute, city, what you're asking for, you didn't ask for in the initial proceedings, you have named a owner of the property. And you named him in his individual capacity. So I tend to think that those nuances are very specific. And they warrant the court to be very clear. I believe that in one of the cases in Just Pants, it states the court has an obligation to be proactive when they recognize an indispensable party is not before the court, as well as the fact that somebody is deceased. All right, counsel, I think you see your time is up. You certainly will have time on rebuttal. Justice Connacht, do you have any follow up questions now? I do not. Justice Lannert? I do not. Okay, thank you. Mr. Mukbana? Thank you very much, Your Honors. The best we understand the arguments of the defense in the court below and before the court, they do not contend that the structural issue does not meet the statutory requirements for demolition, that it was dangerous or unsafe or be unreasonable repair. They do not argue some sort of actual prejudice caused by the demolition order that, you know, they couldn't have repaired their property, etc. Or they didn't have any opportunity to do so. Rather, it appears that their arguments, they're an academic and formalistic hue. Essentially, the state was not named and that in the caption of the complaint, and they raised questions about notice. This is a demolition case. It's a position that the circuit court got it right. And that this court should affirm the circuit court for two reasons. First, the circuit court had jurisdiction to enter both the repair order and the demolition order. And secondly, the circuit court's factual findings before it entered those orders were not against the manifest way of the evidence. As to the subject matter of jurisdiction, we believe that our Supreme Court's decision in Belleville-Toyota controls there, the Supreme Court made clear that apart from administrative review, that the Illinois Constitution confirms, confers very broad jurisdiction on our circuit courts to adjudicate justiciable matters, matters like this one on which the city brought under the demolition statute, seeking to remediate or abate a nuisance property in order to repair or to demolish. It's a proper question for a circuit court to adjudicate, and it has subject matter jurisdiction for that reason. It's a position that the fact that one of the two owners of the property as described in the text, D was deceased, does not affect the court's, the circuit court's subject matter jurisdiction for two reasons. First, there was still a living defendant or some party in interest who could obey the court's order if the court were to order to repair or to demolish. And second, we believe that it's the nuisance property itself that's the focus of, that'll be the focus of a court's order, not necessarily any particular individual or person. So a bank with interest in the property may choose to step in and protect its interest by repairing a property, or the city itself could be ordered to abate the nuisance like we did in this case. Regarding personal jurisdiction, I believe that Justice Lerner, you were just right on point. The conduct of Attorney Letterman really invited a lot of the errors in this case. As a result, we believe that the defendants consented to personal jurisdiction or at least failed to object to personal jurisdiction. And as we all know, personal jurisdiction is, is derived from the actions of the person sought to be bound. So it's their actions when they submit to jurisdiction or concede to it. The record supports robustly that personal jurisdiction was waived. Attorney Kellerman's filings and participation, the appearance was filed on behalf of Faik and Naif Judah. There was a lot of commentary about what the judge could have done, but we do not, it's not a position that it's the role of the judge to interview an attorney regarding the status of their client. The judge should accept the submissions of representations of an officer of the court regarding who their client is, etc. We do not believe that's error on the part of, on part of the judge. We believe that the conduct of Mr. Kellerman makes any argument on the issue of personal jurisdiction untainable. Like I said, on his appearance filed on May 6th, 2019, left no one, left the court and no one else in doubt as to who he represented. And the active participation as the case went forward, left one in no doubt that the interests of at least some of the defendants were represented. It's also significant that Judah Judah, who now approaches the appeals court, asking to be added as a party, attended one of the status hearings that's already raised earlier in the discussion. Yes, it was not testimony under oath, but the judge accommodated the presence, sought information from Mr. Judah at the time, and Mr. Judah did not disclose that he was administrator of the state. And we believe that Mr. Judah could have intervened and brought to the court's attention that as the administrator, that they ought to be a party. The reason for that, I think is quite clear in our position. So on June 18th, 2019, when the judge entered the repair order and January 8th, 2020, when the court entered the demolition order, it's a position that the circuit court had both subject matter jurisdiction and personal jurisdiction to enter both orders. And to the specifics of what the case is actually about, the demolition order, we believe that the factual findings are not against the manifest way of the evidence. And we believe that's where the focus of the court should be. The demolition statute allows a municipality to obtain a court order before demolishing or repairing a property. And that statute is geared to help municipalities remove unused dilapidated structures that present danger and blight. That's where the focus is. Structures that pose a threat to public's health and safety, the municipality within its police powers are interested in that. And the statute is geared there for that purpose. So under the demolition statute and the cases that interpreted it, it's a position that there are two findings that a circuit court must reach or must find before entering an order of demolition. The dangerous and unsafe that I've talked about and the unreasonable repair. The record supports both findings. The city carried its burden as it should on both those two elements. Over two hearings, two hearings during which the court took testimony, the city introduced evidence that the building was dangerous and unsafe. Vagrants broke into the building. Copper wiring and plumbing were stolen. Doors, windows, interior walls severely damaged. Leaking roof, significant water damage for a frozen pipe stream in the winter. Clearly, it was dangerous and unsafe. The records would support that it was beyond reasonable repair. And the cases that have looked at that element speak to whether there's any economic sense in going ahead to repair the property. The value of the property versus any cost or expenses associated with bringing it back to reasonable use. And on that element, there is in the record evidence that the loan balance on the property was around $900,000, while the value of the property was only half of that. Also, the design of the structure, because it's dated, it's obsolete, constructed perpendicular to the main street, and at the back of the property away from business traffic, which significantly reduces the use of the property, even if it were to be repaired. And this is testimony that the defendants did not challenge. At least at the June 18th hearing, Mr. Kellman was there present, did not introduce any evidence to contradict the city's evidence that demolition was proper, did not cross-examine the witnesses or try to introduce any witnesses to push their position that the demolition was not proper. And even at the January 8th 2020 order, there was no discern, no counsel appeared for the defendants. And although Mike Judah, NIAF's son, appeared, it's true he's not an attorney and could not officially represent NIAF. The court still gave him an opportunity to make comments. And that is significant because the comments he made to the court was essentially that there was no money to repair or demolish the property, which is the main focus. If they had some money to do that or any plans for it, it's a position that the court would not have entered that order. I believe the order authorizing the city to demolish the property is an order of last resort in the sense that the judge entered orders in June, the previous year. Come January, there is inaction on the part of the defendants. The issue of the blight and the issue of danger to the public health and safety remains. The city has to take care of its residents so the court entered the order. We believe the concession and what in the court below, and today we haven't heard anything to the contrary, that there was no funds on the part of the defendants to take care of this property. We believe it is sufficient to undermine the defendants' arguments below and on appeal. If I could jump ahead a little bit to that December 17th order of 2021, and I asked this of Mr. Lynch and I will ask you about it as well. Does the trial court's order on that date and that memorandum of opinion and the corresponding order resolve all of the issues in this case? Between the parties, we've heard about what Mr. Lynch would be requesting as far as if the court were to reverse. But if this court were to affirm, in other words, is there anything left for the trial court to do in this case? We believe there's nothing else for the trial court to do. The city sought an order to repay, an order to demolish. The repair wasn't done. The demolition has already happened. Ordinarily, they may have been liens and it was part of the city's relief to seek probably demolition liens to recover its costs. But my recollection of the record is that that has already been dismissed. The city has dismissed its request for liens. So there will be nothing for the circuit court to do if the case were to go back, affirm, or reverse. Regarding the issue of notice, that takes us back to that December order. It's a position that the state waived that argument, raising it for the first time in the motion to reconsider. And as we argued, and this is despite the fact that several members of the family, people who should know, should at least have brought this to the court's attention before that date. It may have been because they had previous counsel, not present counsel. But we do not believe that that particular condition should cut in their favor because we still believe, whether you view it as waiver or forfeiture, that they should not benefit from what we consider the lack of diligence. Also, at the time the property, the court entered its order, there was nothing, I believe up to this point, there's nothing in the record supporting if the estate still has any ownership, apart from arguments. Like we argued in our response brief, this property may have been disposed of or transferred by Mr. Fyfe before his passing and without the necessary recordations taking place. But the answer is we do not know. So the contentions of the estate that this share in this particular property is part of the estate. It's only arguments not supported by any particular argument. And then we think as to that issue of notice, substantively, any lack of statutory notice, we believe did not prejudice the defendants in any fashion. Because even if there was statutory notice, it will not have changed defendants to numerous circumstances because we believe that's what the issue is here. No funds to take care of this property. That's what the issue is here. Because if we believe there were funds, a property owner would have taken the necessary steps to ensure that the property is brought into compliance, or at least a request for more time to do so. Finally, on the non-court order, we believe it's straightforward. At the end of the January 8th, 2020 order, the court entered orally and ordered NIAF in contempt, but the written order contained by its name. The transcript bears that out. So we believe the non-court order of December 17th, 2021 is proper as is set for the writing of the, in writing the court's oral order on January 8th, 2020 and nothing more. To clarify, the reason the court entered the demolition order, it was not a sanction for contempt. The court made findings regarding the condition of the property and two hearings over a period of months and concluded that this property was a good candidate for demolition. The court had the opportunity of hearing from members of the family. It was clear, there was no doubt in the court's mind that the property, the condition it is, is that the property itself should be demolished and that the property owner or owners have done nothing despite opportunity to do so. And if the record bears this out, the order was granted in January of 2020 and the reference to pro se defendants, I find a bit puzzling because the record in C-68 to 71, there was a motion to reconsider filed on January 24th, 2020 after the judge entered that order. That motion was not noticed, was not argued, but it was filed by counsel representing Fahik and Nayem. So a representation that these were pro se's who didn't understand what the court ordered, et cetera, I think it's completely undermining by the record. They had opportunity to repair their property. They didn't do that. The court made the necessary findings and we believe that we asked the court to affirm the orders of the circuit court as consistent with Illinois law. Thank you, Judge. Thank you very much. Justice Connacht, any further questions? Justice Lehner? No, thank you. Okay, thank you, counsel, for your argument. Do we have time for rebuttal? Thank you, your honors. There are a couple of issues that are raised for the first time in this hearing and those relate to no funds being in the possession or in control of the owners of the property. That's never been raised before. I've never heard that. The circuit court never made any findings pursuant to the statute that Mr. Mobana is making reference to. So when we're looking at this, a lot of the testimony was the character of the building and stuff. The ends don't justify the means. At the end of the day, they filed under a very specific statute that required, required, it wasn't like, hey, maybe we will, maybe we won't. It required all owners to be named. In their complaint that they filed, they said fake Judah is the owner. Well, if fake Judah died, are we now looking at this and saying he doesn't have an interest and that the estate interest- Excuse me, counsel. I guess that is a question though. While they named that individual, it ultimately comes to be, not through a certified record or anything, but down the road, I mean, an attorney has entered his appearance on behalf of fake as if he were alive. And while I appreciate you referenced the summons return, I mean, there can be situations to avoid court proceedings where people suggest others are deceased. And so I guess I go back to the question I had before. Since the estate was pending, for all we know, NIAF could have owned the entire property while the case was ongoing if the estate somehow dispensed with it without the evidence that the estate still has an interest in the property. How could we determine they were a necessary party if that evidence is not anywhere in the record that specifically establishes the state's interest because they don't believe it was in the record below? There were assertions made, but there was no evidence of any interest. There's no evidence in the record below as it relates to NIAF Judah's ownership either, or the estate, or the Water Reclamation District. They filed a complaint and they're asserting that these are the owners. That's what they state. So maybe if we took the extension of that, we'd say none of these parties have an ownership interest. At the end of the day, there's clearly an ownership interest. Clearly the estate was a necessary party. That's our position. And as it relates to talking about the character of the property and different things that happen in the position of the property, all of that stuff is irrelevant. And again, all of those proceedings took place at the point in time when there wasn't anybody before the court. There wasn't a... Mr. Mobanis argues and says that it wasn't the contempt. He refers to it as a demolition order. That's a nice way to say it. What it was on January 8th, 2020 was a contempt proceeding, plain and simple. January 8th was a contempt proceeding. The contempt order must be served on the contempting party. It must state the order that is violated. It must state if it's indirect or direct. It must state if it's civil or criminal. And there must be a coercive component to it. We would not be in this situation at all if the contempt order had not been entered. And the count two, Justice Deanoff, you are correct. Count two does provide the city authority for demolition. There was no proceeding. There was no evidence saying, oh, we're moving on count two. Everything in the record says that they are moving on count one, which only required the repair of the property. It did make reference to demolition. Understand that. But the city expressly stated on the record on multiple occasions that it was only seeking the repair of the property. That is even after we come in on the rule to show cause, and I believe it's on the June or the October 13th date, the city states, we think that repair is sufficient. So even at that late stage in the proceeding, they are not seeking demolition. But even if they had, let's say they had sought the demolition, how the owners could be compelled to demolish the building, I understand that the court's orders can do that. How that obligation or that right or duty or the ability of the municipality to undertake the demolition of the property through contempt proceedings, I'm not quite sure that procedurally that is fair minded at all. And that's certainly not due process. They didn't say, judge, we want to have a separate hearing on count two, which provides the city, the authority to demolish the property. That never took place. So I understand that what the goal might have been however, we still have to follow the law and we still have to follow the statutes that are put before the court as it relates to seeking the authority. The municipality doesn't have the right to go through and engage in whatever process and provide notice. To understand the city's argument, we gave some notice and that's adequate. What about the parties that have an interest in the property? There's clearly irreparable harm and to not give them notice is not fair minded at all. Thank you. Thank you, counsel. Justice Connacht, anything further? No. Justice Lanard? No, thank you. Thank you. Thank you, counsel, for your arguments this morning. The court will take the matter under advisement and render a decision in due course. The proceedings are concluded for today.